IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3126 |
| | ) | |
| v. | ) | |
| | ) | FINDINGS, RECOMMENDATION |
| JAVIER GARCIA-HERNANDEZ, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

The defendant has moved to suppress evidence obtained from the search of his residence at 5227 West Benton Street, Lincoln, Nebraska. (Filing No. 20). The search was conducted pursuant to a warrant issued by the undersigned magistrate judge on May 18, 2010. The defendant claims:

- The warrant application provided an insufficient factual basis for concluding evidence of criminal activity would likely be found within his residence;

- The information cited within the warrant application from confidential informant ("CI#3") was not credible;

- The information in the application was stale; and

- No reasonable officer would have relied on the warrant as a justification for searching the defendant's residence.

The defendant does not claim the affiant officer made false statements or concealed material information when presenting her warrant application, or that the undersigned "rubber-stamped" the warrant. The defendant is claiming the warrant application, on its face, fails to support a finding of probable cause.

The warrant application and warrant were filed for the court's review. (Filing No. 23). After reviewing these documents, and for the reasons stated below, the defendant's motion to suppress should be denied without a hearing.

STATEMENT OF FACTS

The warrant application includes an extensive and detailed description of the interrelationship between Delfino Rodriguez, Jorge Rodriguez, Javier Rodriguez, Sabas Cisneros Rodriguez, Hector Galvan, Marvin Solis, Jesus Ortiz, Alberto Perez,[1] and Julissa Segovia, and the residential locations, vehicles, and cell phone numbers they used to transact methamphetamine sales.

As specifically relevant to the search defendant's residence at 5227 W. Benton, the warrant application states as follows:

The affiant officer, Lincoln Police Investigator Melissa Ripley, has ten years of law enforcement experience, and has been assigned to the Lincoln/Lancaster County Drug Task Force for the last three and one-half years.

The investigation at issue dates back to September 2003, when a Penske van rented by Delfino Rodriguez was stopped in Kansas. Delfino Rodriguez was not in the van at the time of the stop. The driver of the van consented to a vehicle search and five hundreds pounds of marijuana were found in the vehicle. Although Delfino Rodriguez was not charged with any crime at that time, (filing no. 23, at CM/ECF p. 6), the affiant officer researched Delfino Rodriguez and discovered he used two aliases: Raul Rodriguez and Jesus Talamas. (Filing No. 23, at CM/ECF p. 7).

In 2009, a confidential informant (CI#2), who had previously provided reliable information leading to seven federal drug indictments, provided information stating she had bought methamphetamine from "Hector," later identified as Hector Galvan Galvan

---

[1] "Alberto Perez" is an alias for defendant "Javier Garcia-Hernandez."

(hereinafter "Hector"). (Filing No. 23, at CM/ECF p. 13). An undercover buy was arranged. When CI#2 and the affiant officer met Hector to purchase cocaine, Hector was driving a blue Toyota truck which was registered to Jorge Rodriguez, 500 W. Cornhusker #2 in Lincoln, Nebraska. (Filing No. 23, at CM/ECF p. 8). The affiant officer again purchased cocaine from Hector on March 24, 2009, and after the drug buy, drove Hector to his stated residence, 231 Adams Street in Lincoln, Nebraska. (Filing No. 23, at CM/ECF p. 8).

During an undercover drug buy in 2009, the affiant officer purchased methamphetamine from CI#4. After the sale was complete, CI#4 got into a black Honda Accord registered to Jorge Rodriguez. (Filing No. 23, at CM/ECF p. 9). The black Honda Accord was the subject of a traffic stop on May 22, 2009. At that time, Jorge Rodriguez, with a stated address of 231 Adams Street, was the driver; Sabas Cisneros Rodriguez, with a stated address of 500 W. Cornhusker #2, was a passenger. (Filing No. 23, at CM/ECF p. 10). When CI#4 later provided a proffer interview to law enforcement, he/she described conducting drug transactions with Jorge Rodriguez by placing money in a cooler, and when he/she later returned to the cooler, the money had been replaced with methamphetamine. (Filing No. 23, at CM/ECF p. 42, 47).

The police conducted surveillance at the 231 Adams and 500 W. Cornhusker locations. On May 28, 2009, Jorge Rodriguez drove a green 1999 Honda from 231 Adams Street to 4007 N. 7th Street in Lincoln, Nebraska. Surveillance was conducted at the 4007 N. 7th Street location, and on June 3, 2009, a grey 1999 Honda registered to Jorge Rodriguez was present at that location. (Filing No. 23, at CM/ECF p. 10-11).

Hector contacted CI#2 in June of 2009 and stated he had a lot of methamphetamine to sell. CI#2 contacted Hector and arranged an undercover methamphetamine sale between Hector and the affiant officer. Hector told CI#2 his cousin would be delivering the

methamphetamine to Hector in twenty minutes. The 500 W. Cornhusker location was under surveillance, and twenty minutes after CI#2 spoke with Hector, a silver 2001 Nissan registered to Jesus Alfred Ortiz arrived at 500 W. Cornhusker. Twelve minutes later, Hector sold methamphetamine to the affiant officer in the area of 1st and Cornhusker, and the affiant officer transported Hector back to 500 W. Cornhusker at Hector's request. Shortly thereafter, Jesus Alfred Ortiz departed in the silver Nissan and drove to 720 S. 19th Street in Lincoln, Nebraska. (Filing No. 23, at CM/ECF p. 12-13).

On July 8, 2009, the affiant officer completed a drug buy from Hector and asked to buy another ounce. Hector stated he needed to contact his source. With information provided from a GPS unit affixed to Ortiz' silver Nissan, law enforcement followed Ortiz to an apartment at 1100 West C Street. Through prior surveillance, the Lincoln police knew Delfino Rodriguez (a/k/a/ Raul Rodriguez or Jesus Talamas) stayed at a 1100 West C apartment. After leaving the 1100 West C location, Ortiz drove to 500 W. Cornhusker. When Ortiz arrived at 500 W. Cornhusker, Hector contacted the affiant officer and stated the methamphetamine had arrived. (Filing No. 23, at CM/ECF p. 14-15).

While conducting surveillance on July 14, 2009, officers saw Ortiz drive to a Wells Fargo bank location in Lincoln. A Lincoln police investigator contacted the bank, which reported Ortiz had deposited money in an account opened in the name of another person. The bank further stated that since May 7, 2009, when the account was opened, numerous deposits were made at the bank's Lincoln location and then immediately withdrawn at one of the bank's Phoenix, Arizona locations. (Filing No. 23, at CM/ECF p. 15).

On September 6, 2009, the affiant officer tried to call Hector but Hector's cell phone number was disconnected. The officer went to 500 W. Cornhusker to find Hector, but instead located Javier Rodriguez. Javier Rodriguez explained Hector had gone to Mexico.

(Filing No. 23, at CM/ECF p. 17). Javier Rodriguez offered to help the affiant officer find methamphetamine, and provided the officer with a cell phone number for Marvin Solis. The affiant officer contacted Marvin Solis and purchased cocaine from him. Thereafter, the affiant officer purchased methamphetamine from, or through contacts with, Marvin Solis on September 16, and on October 11, 13, 21, and 23. (Filing No. 23, at CM/ECF p. 17-19).

During surveillance conducted on July 21, 2009, officers saw a red 2003 Lincoln Navigator parked in the driveway at 4007 N. 7th Street. (Filing No. 23, at CM/ECF p. 15). The red Navigator was registered to Julissa Segovia, 5227 W. Benton, Lincoln, Nebraska. Surveillance officers observed Jorge Rodriguez driving the Segovia's red 2003 Navigator throughout the day.

Officers conducted surveillance at 5227 W. Benton on September 17, 2009 and observed a red PT cruiser registered to Lowell Loberg of Sioux Falls, South Dakota leave the residence. During a traffic stop of the red PT cruiser, CI#3 from Sioux Falls, South Dakota, and Rogelio Castenada Garcia and Alberto Perez from Lincoln, Nebraska were identified as the occupants of the vehicle. (Filing No. 23, at CM/ECF p. 18).

CI#3 was arrested in Sioux Falls, South Dakota in October of 2009. During a proffer interview following the arrest, CI#3 stated he/she purchased a red PT Cruiser from Jorge Rodriguez in the winter of 2009 for $4500 because the vehicle had a hidden compartment for transporting narcotics. (Filing No. 23, at CM/ECF p. 43.) In 2008, a confidential informant (CI#1) stated she purchased methamphetamine from a person known as "Francisco" who drove a red PT cruiser until CI#1 sold his/her vehicle to Francisco in 2008. The affiant officer investigated and determined the vehicle CI#1 sold to "Francisco" was registered to Jorge Rodriguez, 500 W. Cornhusker #2 in Lincoln, Nebraska. (Filing No. 23, at CM/ECF p. 7). In CI#4's proffer statement, CI#4 stated he/she dated Jorge Rodriguez

beginning in January 2009, and according to CI#4, Jorge Rodriguez described owning a red PT Cruiser until he sold it in December of 2008.

CI#3 explained that he/she registered the PT Cruiser as owned by Lowell Loberg of Sioux Falls, South Dakota. According to CI#3, after the vehicle was stopped on September 17, 2009, CI#3 parked the PT Cruiser at 231 Adams and transported methamphetamine to Sioux Falls using a different vehicle because Alberto Perez believed the vehicle was being targeted by the police. (Filing No. 23, at CM/ECF p. 44).

CI#3 stated that at the time of his/her arrest, he/she owned the red PT Cruiser and possessed a white Chevy Impala and a tan Dodge Durango. CI#3 explained the white Chevy Impala and the tan Dodge Durango were registered to Wendy Young of Sioux Falls, South Dakota, the mother of CI#3's main customer. The white Chevy Impala and tan Dodge Durango had been provided to CI#3 in payment for his/her main customer's drug debt. However, CI#3 stated that at the time of his/her arrest, he/she owed Alberto Perez $11,000 on a drug debt. To pay that debt, CI#3 titled the PT Cruiser to Alberto Perez, and the white Chevy Impala and tan Dodge Durango were titled to Alberto Perez and Julissa Segovia. (Filing No. 23, at CM/ECF p. 44).

Based on the independent investigation of law enforcement: 1) the red PT Cruiser that was registered by CI#3 to Lowell Loberg in Sioux Falls, South Dakota is now registered to Raul (Delfino) Rodriguez, (filing no. 23, at CM/ECF pp. 20, 44): 2) a white Chevy Impala registered to Wendy Young was parked in the driveway of 5227 W. Benton on November 9, 2009; (filing no. 23, at CM/ECF p. 20); 3) the same white Chevy Impala was, at the time of the warrant application, registered to Julissa Segovia at 5227 W. Benton, Lincoln, Nebraska; (Filing No. 23, at CM/ECF p. 44); 4) Alberto Perez drives the white Chevy Impala daily; (Filing No. 23, at CM/ECF p. 45); 5) the tan Dodge Durango was, at the time of the warrant

application, registered to Julissa Segovia at 5227 W. Benton, Lincoln, Nebraska, and was frequently parked in that driveway and driven by Alberto Perez and Julissa Segovia; (Filing No. 23, at CM/ECF p. 44-45); and 6) Julissa Segovia lives with Alberto Perez at 5227 W. Benton, Lincoln, Nebraska; (Filing No. 23, at CM/ECF p. 45).

CI#3 further proffered that he/she met Alberto Perez in the 1990s while they were in prison on drug charges, and they were reacquainted in January of 2009 while working for Apex Insulation in Omaha. CI#3 stated he/she and Perez discussed making extra money by selling methamphetamine, and CI#3 began going to locations in Lincoln and Omaha at Perez' direction, where he/she would meet with Hispanic males and obtain methamphetamine. CI#3 explained he/she would go to apartments at 231 Adams and 500 W. Cornhusker, meet with Hispanic males, and in exchange for $20,000, receive a pound of methamphetamine. (Filing No. 23, at CM/ECF p. 43). CI#3 estimates the total amount obtained from various Lincoln locations at Perez' direction was seven pounds. (Filing No. 23, at CM/ECF p. 46).

CI #3 said he/she obtained methamphetamine (totaling approximately two pounds) from Perez on two separate occasions at Perez's residence, and often stayed at 5227 W. Benton with Perez and Segovia when he/she came to Lincoln from Sioux Falls. (Filing No. 23, at CM/ECF p. 45). CI#3 stated vehicles with out-of-state plates (Ohio, Arizona, and Illinois) would arrive at the 231 Adams, 4007 N. 7th, and 5227 W. Benton locations, and the preferred vehicle for use by the group was the Ford F-150 pickup because such vehicles can easily conceal a large amount of drugs. (Filing No. 23, at CM/ECF p. 45).

CI#3 also described drug purchases made from Jorge Rodriguez, who lived at 4007 N. 7th, and Hector Galvan, who lived at 500 W. Cornhusker with Javier Rodriguez. CI#3 explained Jorge Rodriguez and Hector Galvan became paranoid in August or September of 2009, left Lincoln, and went to Mexico. CI#3 stated that after Jorge Rodriguez left, Sabas

Cisneros Rodriguez was living at 4007 N. 7th and sold methamphetamine from that location. (Filing No. 23, at CM/ECF p. 45). By way of proffer, CI#4 stated Jorge Rodriguez lived at 231 Adams with his brother Sabas Cisneros Rodriguez, and his uncle "Hector" in January 2009, but all three moved during the summer of 2009. CI#4 stated Hector moved to 500 W. Cornhusker; Jorge Rodriguez moved to a duplex at 7th and Superior (believed to be the 4007 N. 7th location), and Sabas Cisneros Rodriguez moved to Beatrice, Nebraska but stayed at 4007 N. 7th off and on with his children. (Filing No. 23, at CM/ECF p. 47).

On January 7, 2010, the affiant officer saw a white Navigator registered to Jose Alionso Lopez parked in the driveway of the 4007 N. 7th Street location. Two days later, the same white Navigator was again parked in that driveway, along with a vehicle registered to Raul (Delphino) Rodriguez and a blue 1999 Ford Ranger registered to Victor Bedolla. (Filing No. 23, at CM/ECF p. 22).

On February 9, 2010, a green Buick registered to Ricardo Solis of Columbus, Ohio was parked in the driveway of Ortiz' home at 720 S. 19th. (Filing No. 23, at CM/ECF p. 23). On February 22, 2010, the affiant officer conducted surveillance at Ortiz' residence, 720 S. 19th, and saw a vehicle registered to Raul (Delfino) Rodriguez, a vehicle registered to Raul Rodriguez and Erik Estrada, the green Buick registered to Ricardo Solis, and a blue Cadillac registered to Alberto Perez at 5227 W. Benton in Lincoln, Nebraska parked in the driveway. (Filing No. 23, at CM/ECF p. 24).

On February 26, 2010, the green Buick (with Ohio plates) registered to Ricardo Solis arrived at 5227 W. Benton. Less than a half hour later, the blue Cadillac registered to Alberto Perez left the residence with several occupants and drove to Omaha. A GPS tracking device was placed on Ricardo Solis' green Buick. (Filing No. 23, at CM/ECF p. 26).

On March 3, 2010, a blue Ford Ranger registered to Victor Bedolla was seen at 4007 N. 7th Street. A package was taken from the garage and placed in the cab of the Ranger, and a blue and white cooler, and two blue totes were loaded into the bed of the Ranger. Five days later, on March 8, 2009, the blue Ranger was observed picking up a male at 720 S. 19th Street and later arriving at 5227 W. Benton. Ricardo Solis' green Buick and Raul (Delfino) Rodriguez' white Chevy S-10 pickup were also at the 720 S. 19th location during the day of March 8, 2010. (Filing No. 23, at CM/ECF p. 27).

On March 14, 2010, the white Navigator, which was previously seen in the driveway of the 4007 N. 7th location, was observed arriving at and leaving the 5227 W. Benton location. (Filing No. 23, at CM/ECF p. 28). On March 16, 2010, the white Navigator, occupied by two Hispanic males, arrived at the 720 S. 19th location, and it left that location less than an hour later. It returned approximately 45 minutes later with a tan Chevy Suburban. The drivers spoke briefly, went into 720 S. 19th apartment #10, and the Suburban left. Shortly thereafter, a male got an item out of the white Navigator, placed it in a white Chevy S-10 truck, and left in the white Navigator. The white Navigator returned six minutes later. (Filing No. 23, at CM/ECF p. 29). On March 18, 2010 and March 23, 2010, the white Navigator was seen at the 720 S. 19th Street location. (Filing No. 23, at CM/ECF p. 30). The white Navigator was again seen at 4007 N. 7th on April 16, 2010. It arrived at approximately 3:00 p.m., left twelve minutes later, and returned in less than half an hour with two occupants. (Filing No. 23, at CM/ECF p. 38). On April 17, 2010, the white Navigator was observed at the 720 S. 19th location.

On April 18, 2010, two adults and a child were seen leaving 5227 W. Benton. One of the adults carried a blue and white cooler. They departed in a blue Chevy S-10 pickup registered to Alberto Perez, returned approximately two hours later, and placed the blue and white cooler in the garage. (Filing No. 23, at CM/ECF p. 39). Alberto Perez' blue Chevy S-

10 was seen at the 4007 N. 7th street location on April 29, 2010. On May 1, 2010, Alberto Perez' blue Chevy S-10 was seen at the 5227 W. Benton location, a cooler was placed in its truck bed, and the vehicle left. A tan Ford Crown Victoria arrived shortly thereafter, a cooler was placed in its trunk, and it departed only four minutes after it arrived. (Filing No. 23, at CM/ECF p. 41).

On April 20, 2010, a tan Ford Escape owned by Erik Estrada and Raul (Delfino) Rodriguez arrived at 5227 W. Benton. The two vehicle occupants took a blue and white cooler from the rear cargo area, the passenger took the cooler into the house, and the tan Ford Escape left immediately.

On April 27, 2010, a blue Chevy S-10 pickup registered to Valerie Avila and Jose Ortiz arrived at 5227 W. Benton. A white SUV arrived three minutes later, and both vehicles left five minutes thereafter. A week later, the Avila/Ortiz blue Chevy S-10 pickup was at an apartment located at 5633 S. 31st Street. (Filing No. 23, at CM/ECF p. 41). Based on its prior investigation, the police were aware Ortiz had rented an apartment and garage at that location using the name Jesus Talamas (Delfino Rodriguez) and a current address of 720 S. 19th Street. (Filing No. 23, at CM/ECF p. 40).

Based on their independent investigation, the police knew Alberto Perez and Julissa Segovia resided at 5227 W. Benton, Lincoln, Nebraska. Pursuant to court orders, the Lincoln police collected phone records for cell phones numbers used by the affiant officer to complete undercover drug deals, or known to have been used by Delfino Rodriguez, Jorge Rodriguez, Javier Rodriguez, Sabas Cisneros Rodriguez, Hector Galvan, Marvin Solis, Jorge Arreaga, Alberto Perez, and Julissa Segovia. Based on those records:

-10-

During the 60 days following April 10, 2009, there were 13 cell phone contacts between Hector Galvan and a cell phone number used by Alberto Perez and Julissa Segovia; (Filing No. 23, at CM/ECF p. 43).

Between October 1, 2009 and October 14, 2009, for a cell phone number subscribed to Alberto Perez and used by Sabas Rodriguez, there were:

- 483 contacts to a cell phone number subscribed to Delfino Rodriguez;
- 406 contacts to a cell phone number subscribed to Jose Interiano and Jorge Rodriguez;
- 202 contacts to a cell phone number subscribed to by Javier Rodriguez;
- 155 contacts to a cell phone number used by Hector Galvan;
- 56 contacts to a cell phone number subscribed to Alberto Perez;
- 52 contacts to a cell phone number subscribed to Angelica Felipe and used by Jorge Arreaga, from whom the affiant officer purchased methamphetamine; and
- Six contacts to a cell phone number subscribed to Julissa Segovia. (Filing No. 23, at CM/ECF p. 49).

Between October 15 and October 31, 2009, there were two contacts between a cell phone number subscribed to Alberto Perez and a cell phone number used by Marvin Solis. (Filing No. 23, at CM/ECF p. 53).

For the 60 days following October 29, 2009, for a cell phone number subscribed to Alberto Perez and used by Sabas Cisneros Rodriguez, there were:

- 15 contacts with a cell phone number subscribed to Angelica Felipe and used by Jorge Arreaga, from whom the affiant purchased methamphetamine;
- 359 contacts with a cell phone number subscribed to Delfino Rodriguez;
- 191 contacts with a cell phone number subscribed to Javier Rodriguez;
- 53 contacts with a cell phone number subscribed to Julissa Segovia;
- Six contacts with a cell phone number subscribed to Alberto Perez;
- 85 contacts with a cell phone number subscribed to Jorge Rodriguez; and
- 22 contacts with a cell phone number used by Marvin Solis. (Filing No. 23, at CM/ECF p. 55-56).

Between November 1, 2009 and December 8, 2009, there were 19 contacts between a cell phone number subscribed to Alberto Perez and a cell phone used by Marvin Solis.

Between November 1, 2009 and December 28, 2009, for a cell phone number subscribed to Julissa Segovia, who lives at 5227 W. Benton with Alberto Perez, there were:

- 42 contacts with a cell phone number subscribed to Alberto Perez and used by Sabas Rodriguez;
- 18 contacts with a cell phone number subscribed to Jose Interiano and Jorge Rodriguez; and
- 11 contacts with a cell phone number subscribed to Javier Rodriguez. (Filing No. 23, at CM/ECF p. 56-57).

Between November 1, 2009 and December 8, 2009, for a cell phone number subscribed to Javier Rodriguez, there were:

- 164 contacts with a cell phone number subscribed to Alberto Perez and used by Sabas Rodriguez;
- 91 contacts with a cell phone number subscribed to Delfino Rodriguez; and
- Two contacts with a cell phone number used by Marvin Solis. (Filing No. 23, at CM/ECF p. 57).

Between December 4, 2009 and February 4, 2010, there were five contacts between a cell phone number subscribed to Alberto Perez and a cell phone number used by Marvin Solis.

Between February 12, 2010 and March 12, 2010, there were seven contacts between a cell phone number subscribed to Alberto Perez and a cell phone number used by Marvin Solis.

Based on the information within the warrant application and her training and experience, the affiant officer believed evidence of criminal activity would likely be found during a search of the Alberto Perez' residence at 5227 W. Benton, in Lincoln, Nebraska.

LEGAL ANALYSIS

The defendant claims the evidence seized during the search of 5227 W. Benton must be suppressed because, as to this location, the warrant application lacked a sufficient showing of probable cause. The defendant claims: 1) the application failed to show a sufficient nexus between 5227 W. Benton and suspected illegal drug activity; 2) the information regarding 5227 W. Benton was stale; 3) CI#3's statements were not credible; and 4) the good-faith exception of United States v. Leon, 468 U.S. 897 (1984) does not apply because, with respect to 5227 W. Benton Street, the officers unreasonably relied on the search warrant as authorizing the search.

A search warrant is valid under the Fourth Amendment if it is supported by probable cause. U.S. v. Stevens, 530 F.3d 714, 718 (8th Cir. 2008). When presented with a warrant application, the court must conduct a "'practical, common-sense inquiry,' consider 'the totality of the circumstances set forth,' and determine if, based on the information in the application, there exists a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Stevens, 530 F.3d at 718 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

    1)    <u>Nexus between 5227 W. Benton and illegal drug activity</u>.

The defendant claims the warrant application failed to establish probable cause because the affiant officer performed no controlled buys at 5227 W. Benton, and observing persons and containers going to and coming from 5227 W. Benton Street is consistent with non-criminal activity. Filing No. 21, pp. 2-3. Based on the totality of information within the warrant application, the court disagrees.

As stated in the application, Alberto Perez lived at 5227 W. Benton. Vehicles registered in his name, or in the name of Julissa Segovia who also lived at 5227 W. Benton, were observed going to and coming from residences where undercover officers had performed, or made contacts to perform, illegal drug buys. Vehicles registered to persons known to be engaging in illegal drug activity were observed at the 5227 W. Benton location. Over a period of less than a year, more than 1000 (and perhaps more than 2000) cell phone contacts were made between cell phone numbers subscribed to Alberto Perez and known drug dealers. In addition, CI#3 described illegal drug purchases from Alberto Perez at the 5227 W. Benton location, stated he/she often stayed overnight at that location before returning to Sioux Falls with methamphetamine purchases, and observed Ohio, Illinois, and Arizona vehicles at the location.

Contrary to the defendant's argument, even in the absence of statements describing controlled buys occurring at 5227 W. Benton, illegal drugs observed at that location, or the possession of illegal drugs by the occupants of 5227 W. Benton, the application supports a probable cause finding. A conspiracy to distribute methamphetamine may be proved without any physical evidence. U.S. v. Becerra 435 F.3d 931, 937 (8th Cir. 2006).

The warrant application describes numerous interrelated communications, personal contacts, and shared vehicles between a group of known drug dealers and the persons residing at 5227 W. Benton. Viewed as a whole, the information collected by the police through surveillance, controlled drug buys, and court orders for cell phone records established a likely connection between persons known to be involved in illegal drug activity and the 5227 W. Benton residence. See U.S. v. Keele, 589 F.3d 940, 944 (8th Cir. 2009)(holding probable cause existed for a residential search warrant where evidence of drug manufacturing and distribution was recovered from an accident scene, and the affiant officer stated that in his

-14-

experienced opinion, drug manufacturers often keep contraband and proceeds at their personal residences).

2) Stale information.

The defendant claims that as related to the 5227 W. Benton location, the information in the warrant application was stale and could not be relied on in determining the existence of probable cause. As explained by the Eighth Circuit:

> Probable cause must exist when a warrant is issued, not merely at some earlier time, but there is no bright-line test for determining when information is stale. . . . Furthermore, time factors must be examined in the context of a specific case and the nature of the crime under investigation. . . Where continuing criminal activity is suspected, the passage of time is less significant. . . In investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant does not necessarily make the information stale.

U.S. v. Morrison, 594 F.3d 626, 631 (8th Cir. 2010)(internal citations and quotation marks omitted).

The warrant application was submitted to the court on May 18, 2010. Surveillance revealed short-term vehicle traffic at the 5227 W. Benton location on May 1, 2010. Coolers were placed in the truck bed of Alberto Perez' blue Chevy S-10 pickup and in the trunk of a tan Ford Crown Victoria promptly after the vehicle arrived that day. (Filing No. 23, at CM/ECF p. 41). This vehicular traffic and use was consistent with the ongoing drug activity under investigation which dated back at least two years. The application information describes a continuing pattern of behavior, and when taken as a whole, the information linking 5227 W. Benton to the illegal activity was not stale. United States v. Palega, 556 F.3d 709, 715 (8th Cir. 2009).

3) CI#3's credibility.

The defendant claims "[i]nformation provided by CI #3 was either incorrect or untruthful and therefore was not reliable and did not create a probability that the search would lead to evidence of contraband." Filing No. 21, p. 4. "Although 'an informant's veracity, reliability and basis of knowledge are all highly relevant' in determining whether probable cause exists when an affidavit is based on hearsay information, they are not 'entirely separate and independent requirements to be rigidly exacted in every case.'" Stevens, 530 F.3d at 718. When the police use informants without a track record, the information received may be deemed reliable if it is independently corroborated by the officers' own investigation or cross-corroborated through information received from other informants. U.S. v. Nieman, 520 F.3d 834, 840 (8th Cir. 2008).

CI#3's statements were corroborated by independent law enforcement investigations, and were cross-corroborated by the statements of other informants. CI#3's description of the chain of ownership of the red PT cruiser was corroborated by the statements of CI#1 and CI#4, as well as the observations and title registration investigations of law enforcement. CI#3 stated Alberto Perez and Julissa Segovia had a white Chevy Impala and a tan Dodge Durango, both of which were previously registered to Wendy Young. This information was independently corroborated through vehicle registration records and the officer's surveillance at the 5227 W. Benton location. CI#3 stated he/she purchased methamphetamine at 231 Adams and 500 W. Cornhusker, and provided the names of the dealers. The names and locations disclosed by CI#3 were consistent with the information available to the police officers through their own observations and investigations and the statements of other confidential informants. CI#3's description of how coolers were used to exchange money for drugs was consistent with the events witnessed by law enforcement conducting surveillance

at 5227 W. Benton and other locations. CI#3's statements were substantially corroborated and sufficiently reliable for assessing the existence of probable cause.

Moreover, and contrary to the defendant's argument, even without information provided by CI #3, there was probable cause to issue a warrant to search Alberto Perez' residence at 5227 W. Benton. Specifically, the information acquired by law enforcement regarding the vehicles used by known drug dealers; the short-term traffic at known drug locations; the short-term traffic, including the use of coolers, at 5227 W. Benton; the presence of vehicles registered to Alberto Perez and Julissa Sergovia at known drug locations; and the extensive use of cell phone numbers subscribed to Alberto Perez to contact known drug dealers, provided probable cause for a search warrant.

  4) Reasonable reliance on the warrant–the Leon exception.

Under the Leon good-faith exception, evidence seized pursuant to a search warrant issued by a judge will not be suppressed "if the executing officer's reliance upon the warrant was objectively reasonable." U.S. v. Proell, 485 F.3d 427, 430 (8th Cir. 2007). The defendant argues that "law enforcement's reliance on the warrant was not reasonable because information provided by CI#3 was not credible." Filing No. 21, p. 6.

The defendant is not claiming the affiant officer knew or should have known CI#3 lacked credibility, or that the officer knowingly concealed material information which would tend to undermine CI#3's statements and credibility. Moreover, even if the defendant's arguments are accepted and CI#3's statements are removed from the affiant officer's affidavit, probable cause would still exist. Under such circumstances, the officer was objectively reasonable in relying on a judicial determination of probable cause, and evidence obtained

pursuant to the warrant should not be suppressed. United States v. Martin, 833 F.2d 752, 756 (8th Cir. 1987).

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B), that the defendant's motion to suppress, (filing no. 20), be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

IT IS FURTHER HEREBY ORDERED: Trial is set for 9:00 a.m. on May 2, 2011 for a duration of five trial days before the Honorable Richard G. Kopf. Jury selection will be at the commencement of trial.

April 8, 2011	BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.